UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| B.D., a Minor, <br> By and Through His Father, <br> RAYMOND DUQUETTE, <br><br> Plaintiff, <br><br> v. <br><br> SLICE AND SCOOP INC., <br> FADI EL AMMAR, <br> DANNY ABOUNAJEM, and JAZ LNU, <br><br> Defendants. | C.A. No. 1:24-cv-00484-MSM-AEM |

## MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

B.D., a minor, worked at Slice and Scoop Inc. for less than ten hours over a two-day period. Soon after that, he stopped working there because its manager had not given him employment paperwork. A month later, Slice and Scoop sent him a $140.00 check for the short time he spent there.

B.D. then sued Slice and Scoop, its two owners, and its manager for $50,000.[1] (ECF No. 1 ¶ 51.) He alleges that Slice and Scoop violated the federal Fair Labor Standards Act ("FLSA") and the Rhode Island Payment of Wages Act ("RIPWA"). *Id.*

---

[1] The two owners are Fadi El Ammar and Danny Abounajem, and the manager is called "Jaz" (last name unknown) in the Complaint. (ECF No. 1 ¶¶ 3–5.) For ease of reading, the Court refers to the defendants collectively as "Slice and Scoop" unless otherwise noted.

¶¶ 30–43. He also alleges that Slice and Scoop intentionally inflicted emotional distress on him and negligently misrepresented his employment relationship. *Id.* ¶¶ 44–50.

Slice and Scoop now moves to dismiss the claims. (ECF No. 12.) For the reasons below, its Motion is GRANTED.

## I.  BACKGROUND

The relevant facts begin on April 29, 2024, when "Jaz," a manager at Slice and Scoop, hired B.D. (ECF No. 1 ¶¶ 10–11.) On May 3, Jaz directed B.D. via text to report to the restaurant on May 6 at 5:00 p.m. for training. *Id.* ¶ 16. He did so, and his shift on May 6 lasted until about 9:30 p.m. *Id.* ¶ 17. He also trained on May 7, from about 4:00 p.m. to 9:00 p.m. *Id.* ¶ 18. The next day, B.D. reached out to Jaz to get his schedule for the rest of the week, as well as necessary employment paperwork, but she did not reply. *Id.* ¶ 19.

On May 18, B.D. contacted Jaz again via text, asking about his schedule and the paperwork. *Id.* ¶ 20. Jaz instructed B.D. to report for additional training on May 20, but she did not provide the paperwork he asked for. *Id.* ¶ 21. Because of that, B.D. informed Jaz that he would not attend work. *Id.* ¶ 22. No formal termination ever occurred. *Id.* ¶ 23.

On June 18, B.D. received via first-class mail a check made out to him—though with his name spelled incorrectly—from Slice and Scoop for $140.00, with the memo "For: Training." *Id.* ¶ 24. It did not include any other employment documentation. *Id.* B.D. has not cashed or deposited the check. *Id.* ¶ 25.

Since then, B.D. felt "distressed about having worked two shifts around equipment he was not properly trained on, not completing the required employment paperwork, and not receiving pay." *Id.* ¶ 26. In his view, he has suffered "emotional distress and financial harm" from the incident. *Id.* ¶ 27. He "faced challenges in securing summer employment" for the summer of 2024, because "many businesses had already completed their hiring for the summer months" by the time he left Slice and Scoop. *Id.* ¶ 28. He did not get another job until July 2024—thus "losing more than two months of full-time summer work" at Slice and Scoop's hands. *Id.* ¶ 29.

So B.D. sued Slice and Scoop, its two owners, and Jaz. (ECF No. 1.) He alleges that their actions violated the FLSA and the RIPWA, and he alleges that they intentionally inflicted emotional distress against him and negligently misrepresented his employment relationship. *Id.* ¶¶ 30–50. Slice and Scoop now moves to dismiss the claims under Fed. R. Civ. P. 12(b)(6). (ECF No. 12.)

## II.   MOTION TO DISMISS STANDARD

To survive a motion to dismiss under Rule 12(b)(6), B.D. must lay out a "plausible claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In other words, he must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In evaluating a claim's plausibility, the Court must "assume the truth of

3

all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Thomas v. Rhode Island*, 542 F.3d 944, 948 (1st Cir. 2008).

### III. DISCUSSION

#### A. Count I: FLSA Claim

To start, Slice and Scoop argues that the federal FLSA claim fails for two reasons: (1) because it contains no allegations establishing the required "nexus to interstate commerce" needed for a federal wage claim and (2) because, even if it did, Slice and Scoop adequately paid B.D. for his time, so he has not stated a viable claim. (ECF No. 12 at 9–12.) B.D. responds with three arguments: (1) that his work at Slice and Scoop did have a nexus with interstate commerce, (2) that Slice and Scoop never paid him for his work, and (3) that Slice and Scoop never adequately responded to his allegations about "oppressive child labor" under the FLSA. (ECF No. 14 at 2–8.)

##### 1. Nexus to Interstate Commerce

The Court begins with the interstate commerce argument. The First Circuit has explained that one essential element of a FLSA wage claim is that "the work involved interstate activity." *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 43 (1st Cir. 2013) (cleaned up). So the Complaint must "allege facts sufficient to establish that either the plaintiff's work or another employee's work involved interstate commerce within the meaning of the Act." *Martinez v. Petrenko*, 792 F.3d 173, 179 (1st Cir. 2015).

The Complaint does not contain those allegations. It simply states that Slice and Scoop "is a corporation duly organized and existing under the laws of Rhode

4

Island," operating in Smithfield with its principal place of business in Cumberland. (ECF No. 1 ¶ 2.) But the Complaint does not explain what Slice and Scoop does—at all or with respect to interstate commerce—nor does it explain what B.D.'s job was, other than "to perform various tasks, including but not limited to working around dangerous equipment, without proper training and/or supervision." *Id.* ¶ 15. Those vague allegations are not "sufficient to establish" what anyone's work was, let alone that the work "involved interstate commerce." *Martinez*, 792 F.3d at 174.

The failure to include those allegations is dispositive. *Id.* at 175 ("The burden is on the employee to prove," or at this point, just allege "a sufficient nexus to interstate commerce as an essential element of the claim."); *see also Costello v. Molari, Inc.*, No. 3:17-CV-30184-KAR, 2019 WL 6170864, at *4 (D. Mass. Nov. 20, 2019) (granting summary judgment where "Plaintiff did not plead any factual allegations tending to show that Molari's business crossed state lines such that the criteria for enterprise coverage would be satisfied" and the same was "true as to individual coverage"); *Meredith Perez v. Fed. Emergency Mgmt. Agency*, No. CV 21-1230(GMM), 2024 WL 4425823, at *16 (D.P.R. Sept. 30, 2024) (dismissing claims where "Plaintiffs' allegations simply track the language of the FLSA and repeat the legal standard for determining whether an employer is a covered entity"). And B.D., like the plaintiff in *Martinez*, "did not file a motion to amend his complaint, so he can hardly complain about being held to his original complaint." 792 F.3d at 179.

B.D.'s argument to the contrary is creative but unconvincing. He notes that, as Slice and Scoop's name suggests, it "sells pizza and ice cream." (ECF No. 14 at 6.)

5

From that, it is obvious that Slice and Scoop is a restaurant, and because it is a restaurant only a mile from Interstate 295, it must deal in interstate commerce. *Id.* Supreme Court precedent requires as much, B.D. insists. *Id.* That is because Ollie's Barbecue—the restaurant at issue in *Katzenbach v. McClung,* the landmark Supreme Court case upholding the constitutionality of the Civil Rights Act of 1964 based on Congress's power to regulate interstate commerce—was also found to deal in interstate commerce. *Id.*

But there are several problems with that. First, even if the argument is right, it does not address the insufficiency of the facts as alleged in the Complaint. 792 F.3d at 174. None of that is in the Complaint, only B.D.'s response brief.

Second, the analysis is incorrect. *Katzenbach* concerned the constitutionality of Title II of the Civil Rights Act of 1964, and Ollie's Barbecue admitted that it was "covered" by provisions of the Act extending to restaurants that serve interstate travelers or sell food substantially acquired through interstate commerce. 379 U.S. 294, 298 (1964). By contrast, this case concerns the FLSA and no similar admission (or even a similar allegation) exists here.

And either way, a restaurant's proximity to an interstate highway is not dispositive on the FLSA's interstate commerce question. There is a well-established framework for proving these claims that B.D. declined to engage with. *See, e.g.*, *Martinez*, 792 F.3d at 174–75 ("The employee can prove this nexus by showing that the employee engaged in commerce for the employer within the meaning of the Act, or by showing that the employer has other employees who engaged in commerce

6

within the meaning of the Act and that the employer also generated annual gross sales of not less than $500,000."). Though B.D. suggests that this case is so clear that the framework is "irrelevant," the Court disagrees. (ECF No. 14 at 7.)

Accordingly, B.D. has failed to allege an adequate nexus with interstate commerce under the FLSA. That alone warrants dismissal of the FLSA wage claim.

### 2. Alleged FLSA Violations

But to be thorough, the Court will also address the substantive FLSA allegations. B.D. makes two.

First is that Slice and Scoop failed to pay him "minimum wage and overtime as required by the FLSA." (ECF No. 1 ¶ 31.) The FLSA requires that employers must pay employees not less than the federal minimum wage of $7.25. *See* 29 U.S.C. § 206(a)(1)(C). B.D. alleges that he worked 9.5 hours total: 4.5 hours on May 6, 2024, and 5 hours on May 7, 2024. *Id.* ¶¶ 17–18. A month later, Slice and Scoop sent him a $140.00 check for "training," in reference to those two shifts. *Id.* ¶ 24. Dividing $140 across 9.5 hours yields an hourly wage of about $14.73, more than twice the federal minimum wage. By his own account, he was paid enough to satisfy the FLSA. This claim is thus not plausible.

And the Court cannot see how B.D. was due overtime when—by his admissions—he worked less than ten hours total. (ECF No. 1 ¶ 31.) At least forty hours in a one-week period are necessary to trigger overtime rules. *See* 29 U.S.C. § 207(a)(1); *see also Roman v. Maietta Const., Inc.*, 147 F.3d 71, 76 (1st Cir. 1998) (explaining that "the FLSA requires employers to compensate employees at a rate

7

one and one-half times the regular rate of pay for any hours worked in excess of 40 hours per week"); *Mercado-Rodriguez v. Hernandez Rosario*, 150 F. Supp. 3d 171, 173–74 (D.P.R. 2016) (Gelpi, J.) (holding that "because [the plaintiff] does not claim that he worked a workweek that exceeded forty hours, the statutory minimum to trigger the FLSA overtime compensation requirements, there has been no violation of the FLSA").[2]

B.D.'s second FLSA allegation fares no better. He alleges that, "by failing to complete require work documents for" him, "at that time a minor between the ages of sixteen and eighteen engaged in the operation of hazardous equipment," Slice and Scoop "engaged in oppressive child labor" in violation of § 212 of the FLSA. (ECF No. 1 ¶ 32.)[3]

There are three reasons that this allegation fails to state a proper claim for relief. First, failure to complete paperwork is not "oppressive child labor" under the law. Under § 212(c) of the FLSA, employers are prohibited from causing "oppressive child labor." The Secretary of Labor has the power to declare what meets that standard. 29 U.S.C. § 203(l). And it has declared that tasks involving radioactive

---

[2] B.D.'s ancillary argument that he was "not paid" at all is also unconvincing. (ECF No. 14 at 2–4.) 29 C.F.R. § 531.27(a) explains that the FLSA requires "payments of the prescribed wages, including overtime compensation, in cash or negotiable instrument payable at par." The check described in the Complaint satisfies that requirement, no matter if he deposited it. The other arguments about the check's untimeliness are irrelevant for FLSA purposes and unsupported by federal caselaw.

[3] The Court reads ¶ 33 as a continuation of the allegations stated in ¶ 32, rather than a separate allegation, given that they both center on the lack of employment paperwork provided.

substances, meat-processing machines, and even some bakery machines can meet that standard. *See, e.g.*, 29 CFR §§ 570.57 (radioactive substances), 570.61 (meat-packing), 570.62 (bakery machines). In contrast, failing to provide employment paperwork does not subject B.D. to similarly dangerous circumstances, and B.D. does not include any "oppressive child labor" regulations that it might contravene.

Second, although it could be true that the "operation of hazardous equipment" at Slice and Scoop constituted "oppressive child labor," B.D.'s general references to "dangerous" and "hazardous equipment" fail under the pleading standard. *See Morales-Cruz v. Univ. of Puerto Rico*, 676 F.3d 220, 224 (1st Cir. 2012) ("To implement the plausibility standard, an inquiring court first must separate wheat from chaff; that is, the court must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).") Recall that B.D. never explained what his job was, beyond "to perform various tasks, including but not limited to working around dangerous equipment, without proper training and/or supervision." *Id.* ¶ 15. What equipment did Slice and Scoop require him to use? Why was it hazardous or dangerous? What did the training or supervision, if any, look like? The Complaint offers no details on these essential questions, and B.D.'s general references to "hazardous" and "dangerous equipment" cannot alone satisfy the standard.

Third—and most fatal to the claim—the courts that have addressed the question agree: there is no private right of action to collect damages under § 212 of the FLSA. *See, e.g.*, *Breitwieser v. KMS Indus., Inc.*, 467 F.2d 1391, 1393–94 (5th

9

Cir. 1972); *Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 869 (S.D. Ohio 2005). Instead, only the Secretary of Labor has the power to bring suit over "oppressive child labor" FLSA violations. *See* 29 U.S.C. § 212(b); *id.* at §§ 216–217; *Su v. Mar-Jac Poultry of Alabama*, LLC, No. 6:24-CV-00569-LSC, 2024 WL 3278954, at *2 (N.D. Ala. July 2, 2024). B.D. identifies no precedent to the contrary and makes no argument otherwise suggesting that the Court should break from that consensus.[4]

Another part of the statute confirms as much. Section 216(b) establishes a right of action for damages under §§ 206–07 of the Act, as well as other parts. *See* 29 U.S.C. § 216(b). But it does not specifically mention a right of action for § 212. *Id.* "The absence of an express" right of action for § 212, "coupled with the presence of an express" right of action for other sections, is "highly significant." *United States v. Hernandez-Ferrer*, 599 F.3d 63, 67 (1st Cir. 2010). As the First Circuit explained (in interpreting a different statute), "the maxim '*expressio unius est exclusio alterius*'—which translates roughly as 'the expression of one thing is the exclusion of other things'—is a venerable canon of statutory construction," and "that maxim is directly applicable here." *Id.* at 67–68 (cleaned up). And without a right of action, the claim under § 212 necessarily fails.

For all these reasons, B.D. has failed to state a plausible claim for relief under the FLSA. Count I is thus DISMISSED WITH PREJUDICE.

---

[4] B.D.'s argument that Slice and Scoop "entirely" failed to address this allegation, thus waiving any argument about it, is misplaced. (ECF No. 14 at 7–8.) In its opening brief, Slice and Scoop argued that "the further claims Plaintiff makes referencing other allegations under the FLSA . . . are not proper claims for an individual private right of action under 29 U.S.C. § 216(b)." (ECF No. 12 at 15.)

### B. Counts II, III, and IV: Supplemental Jurisdiction

That leaves B.D.'s remaining claims: a RIPWA claim (Count II), a claim for intentional infliction of emotional distress (Count III), and a claim for negligent misrepresentation (Count IV). These are all state-law claims.

Under 28 U.S.C. § 1367(c)(3), the Court may "decline to exercise supplemental jurisdiction" over remaining claims if it "has dismissed all claims over which it has original jurisdiction." Following dismissal of "all federal claims on the pleadings," the First Circuit has said that "dismissal of the state claims" is "perfectly reasonable." *Rossi v. Gemma*, 489 F.3d 26, 39 (1st Cir. 2007); *see also Rodriguez v. Doral Mortg. Corp.,* 57 F.3d 1168, 1177 (1st Cir. 1995) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims."). In fact, the First Circuit has made clear that, following dismissal of all federal claims, "it is an abuse of discretion for a district court to retain jurisdiction over the remaining pendent state law claims unless doing so would serve 'the interests of fairness, judicial economy, convenience, and comity.'" *Wilber v. Curtis*, 872 F.3d 15, 23 (1st Cir. 2017) (citation omitted).

None of those interests favor retaining jurisdiction here. The First Circuit has noted that comity "is a particularly important concern" in the analysis. *Camelio v. Am. Fed'n,* 137 F.3d 666, 672 (1st Cir. 1998). And the Supreme Court has explained that "needless decisions of state law" in federal court "should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a

11

surer-footed reading of applicable law." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (cleaned up). "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.* Fairness, judicial economy, and convenience all weigh against retention too, given (1) that this case is in an early stage, (2) that there would be little prejudice to the parties, and (3) that state courts are better equipped to handle the state-law questions that remain. *Camelio*, 137 F.3d at 672.

Counts II, III, and IV are thus DISMISSED WITHOUT PREJUDICE.

## IV.  CONCLUSION

For the reasons above, Slice and Scoop's Motion to Dismiss (ECF No. 12) is GRANTED. Count I is DISMISSED WITH PREJUDICE and Counts II, III, and IV are DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.

_____
Mary S. McElroy,
United States District Judge

May 28, 2025